UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------- X

GRETHEL MCDONALD,

                              Plaintiff,     **COMPLAINT**

             -against-

                                             **JURY TRIAL DEMANDED**

THE CITY OF NEW YORK; and NYPD P.O.
JOHN/JANE DOES #1-10; the individual
defendant(s) sued individually and in
their official capacities,

                              Defendants.

----------------------------------------- X

**PRELIMINARY STATEMENT**

         1.   This is a civil rights, common law, and tort
action in which plaintiff seeks relief for the violation of his
rights secured by the laws of the State of New York; New York
State Constitution; 42 U.S.C. §§ 1983 and 1988; and the Fourth,
Sixth, and Fourteenth Amendments to the United States
Constitution.  Plaintiff's claims arise from an incident that
took place on September 30, 2017.  During the incident, the City
of New York, and members of the New York City Police Department
("NYPD") subjected plaintiff to, among other things, unlawful
search and seizure, excessive force, false arrest, failure to
intervene, and implementation and continuation of an unlawful
municipal policy, practice, and custom.  Plaintiff seeks
compensatory and punitive damages from the individual
defendants, compensatory damages from the municipal defendant,

declaratory relief, an award of costs and attorney's fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION & VENUE

2.   Jurisdiction is conferred upon this Court by the aforesaid statutes and 28 U.S.C. §§ 1331 and 1343.

3.   Venue is proper here pursuant to 28 U.S.C. § 1391 because some of the acts in question occurred in Richmond County, and Richmond County is subject to personal jurisdiction in the Eastern District of New York.

## PARTIES

4.   Plaintiff GRETHEL MCDONALD is an African American female, who is a resident of the State of New York, Richmond County.

5.   At all times alleged herein, defendant City of New York was a municipal corporation organized under the laws of the State of New York, which violated plaintiff's rights as described herein.

6.   At all times alleged herein, defendants NYPD P.O. John/Jane Does #1-10 were New York City Police Officers employed with the 120th Precinct, located in Richmond County, New York or other as yet unknown NYPD assignment, who violated plaintiff's rights as described herein.

7.   The individual defendants are sued in their individual and official capacities.

<u>**STATEMENT OF FACTS**</u>

8.   On September 30, 2017 at and in the vicinity of Campbell Street, West Brighton, Richmond County, Staten Island, New York, and the 120th Precinct, Staten Island, New York, several police officers operating from the 120th Precinct, including, upon information and belief, defendants NYPD P.O. John/Jane Does #1-10, at times acting in concert, and at times acting independently, committed the following illegal acts against plaintiff.

9.   On September 30, 2017, at approximately 1:00 a.m., at and in the vicinity of 173 Campbell Street, Richmond County, Staten Island New York, NYPD P.O. John/Jane Does #1-10, without either consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion that plaintiff had committed a crime, committed excessive force upon and unlawfully arrested plaintiff.

10.   Plaintiff was at 173 Campbell Street, her bag was on the porch.

11.   Plaintiff saw NYPD P.O. John Doe #1 unlawfully seized her bag and was holding it.

12.   Plaintiff asked for her bag.

3

13.   NYPD P.O. John Doe #1, told plaintiff she could not have her bag, and that she had to go to the precinct.

14.   Plaintiff asked for her bag back, and told NYPD P.O. John Doe #1, that he had no lawful right to take plaintiff's bag because it was on private property.

15.   NYPD P.O. John Doe #1 then asked plaintiff for her identification card.

16.   Plaintiff told NYPD P.O. John Doe #1, that her identification card was in her purse.

17.   NYPD P.O. John Doe #1, searched plaintiff's bag, and told NYPD P.O. John Doe #2, to write plaintiff a ticket.

18.   NYPD P.O. John Doe #1 then grabbed plaintiff.

19.   NYPD P.O. John Doe #1, slammed plaintiff to the ground.

20.   NYPD P.O. John Doe #1 put his knee on plaintiff's face.

21.   NYPD P.O. John Doe #1, called claimant a bitch.

22.   NYPD P.O. John Doe #1 placed excessively tight handcuffs on plaintiff.

23.   Those officers who did not touch plaintiff failed to protect her from these unlawful acts.

24.   NYPD P.O. John Doe #1 then placed plaintiff in a police car.

25.   NYPD P.O. John Doe #1, and John Doe #2, took plaintiff to the 120th precinct.

26.   Plaintiff was placed in a cell while her arrest was processed.

27.   During this time, in order to cover up their illegal actions, NYPD P.O. John Doe #1, pursuant to a conspiracy, falsely and maliciously told the Richmond County District Attorney's Office that plaintiff had committed various crimes.

28.   Because there was no basis to arrest or prosecute plaintiff, the case against him terminated in her favor, when all charges against her were dismissed.

29.   The individual defendants acted in concert committing the above-described illegal acts toward plaintiff.

30.   Plaintiff did not violate any law, regulation, or administrative code; commit any criminal act; or act in a suspicious or unlawful manner prior to or during the above incidents.

31.   At no time prior to, during or after the above incidents were the individual defendants provided with information, or in receipt of a credible or an objectively reasonable complaint from a third person, that plaintiff had violated any law, regulation, or administrative code; committed

any criminal act; or acted in a suspicious or unlawful manner prior to or during the above incidents.

32.   The defendants acted under pretense and color of state law and within the scope of their employment.  Said acts by said defendants were beyond the scope of their jurisdiction, without authority or law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive plaintiff of their rights.

33.   As a direct and proximate result of defendants' actions, plaintiff experienced personal and physical injuries, pain and suffering, fear, an invasion of privacy, psychological pain, emotional distress, mental anguish, embarrassment, humiliation, and financial loss.

34.   Plaintiff is entitled to receive punitive damages from the individual defendants because the individual defendants' actions were motivated by extreme recklessness and indifference to plaintiff's rights.

35.   Upon information and belief, the unlawful actions against plaintiff were also based on profiling.

**FIRST CLAIM**

**(FALSE ARREST UNDER FEDERAL LAW)**

36.   Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

37.   Defendants falsely arrested plaintiff without consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion that plaintiff had committed a crime.

38.   Accordingly, defendants are liable to plaintiff for false arrest under 42 U.S.C. § 1983; and the Fourth and Fifth Amendments to the United States Constitution.

### SECOND CLAIM

#### (UNLAWFUL SEARCH AND SEIZURE UNDER FEDERAL LAW)

39.   Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

40.   Defendants unlawfully stopped and searched plaintiff without cause, a warrant, or consent.

41.   Accordingly, defendants are liable to plaintiff for unlawful search and seizure under 42 U.S.C. § 1983; and the Fourth and Fifth Amendments to the United States Constitution.

### THIRD CLAIM

#### (EXCESSIVE UNREASONABLE FORCE)

42.   Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

43.   The individual defendants' use of force upon plaintiff was objectively unreasonable.

44.   The individual defendant officers did not have an objective and/or reasonable basis to use any degree of force

against plaintiff, since plaintiff was unarmed, compliant, and did not resist arrest.

45.   Those defendants who did not touch plaintiff, witnessed these acts, but failed to intervene and protect plaintiff from this conduct.

46.   Accordingly, the defendants are liable to plaintiff for using unreasonable and excessive force, pursuant to 42 U.S.C. § 1983; and the Fourth Amendment to the United States Constitution.

## FIFTH CLAIM

### (FAILURE TO INTERVENE)

47.   Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

48.   Defendants had a reasonable opportunity to prevent the violations of plaintiff's constitutional rights, but they failed to intervene.

49.   Accordingly, the defendants are liable to plaintiff for failing to intervene to prevent the violation of plaintiff's constitutional rights.

## SIXTH CLAIM

### (MONELL CLAIM)

50.   Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

51.   Defendant City of New York, through a policy, practice, and custom, directly caused the constitutional violations suffered by plaintiff.

52.   Defendant City of New York through the NYPD and its officers, committed the following unconstitutional practices, customs, and policies against plaintiff: (1) unlawfully stopping and searching innocent persons; (2) wrongfully arresting innocent persons in order to meet productivity goals; (3) wrongfully arresting individuals based on pretexts and profiling; (4) using unreasonable force on individuals; and (5) fabricating evidence against innocent persons.

53.   Upon information and belief, defendant City of New York, at all relevant times, was aware that the defendants were unfit officers who have previously committed the acts alleged herein, have a propensity for unconstitutional conduct, or have been inadequately trained.

54.   Nevertheless, defendant City of New York exercised deliberate indifference by failing to take remedial action.  The City failed to properly train, retrain, supervise, discipline, and monitor the individual defendants and improperly retained and utilized them.  Moreover, upon information and belief, defendant City of New York failed to adequately

investigate prior complaints filed against the individual defendants.

55.   Further, defendant City of New York was aware prior to the incident that the individual defendants (in continuation of its illegal custom, practice, and/or policy) would stop, arrest, and prosecute innocent individuals, based on pretexts and false evidence.

56.   The existence of the aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct involving the individual defendants, placing the defendant City of New York on notice of the individual defendants' propensity to violate the rights of individuals.

57.   In addition to frequently violating the civil rights of countless residents of New York City, numerous members of the NYPD commit crimes.  Officers have been arrested and convicted of such crimes as planting evidence on suspects, falsifying police reports, perjury, corruption, theft, selling narcotics, smuggling firearms, robbery, fixing tickets, driving under the influence of alcohol, vehicular homicide, assault, and domestic violence.  In fact, former NYPD Commissioner Bernard Kerik was convicted of corruption-related crimes in federal and state courts and served time in federal prison.  In 2011, Brooklyn South Narcotics Officer Jerry Bowens was convicted of

murder and attempted murder in Supreme Court, Kings County,
while under indictment for corruption and is presently serving a
life sentence.  In 2011, Police Officer William Eiseman and his
subordinate Police Officer Michael Carsey were convicted of
felonies in Supreme Court, New York County, for lying under
oath, filing false information to obtain search warrants and
performing illegal searches of vehicles and apartments.  In
2012, New York City Police Officer Michael Pena was convicted in
Supreme Court, New York County, of raping and sexually
assaulting a woman at gunpoint and is presently serving a
sentence of 75 years to life.

   58.  The foregoing customs, policies, usages,
practices, procedures, and rules of the City of New York and the
NYPD were the direct and proximate cause of the constitutional
violations suffered by plaintiff as alleged herein.

   59.  The foregoing customs, policies, usages,
practices, procedures, and rules of the City of New York and the
NYPD were the moving force behind the constitutional violations
suffered by plaintiff as alleged herein.

   60.  The City's failure to act resulted in the
violation of plaintiff's constitutional rights as described
herein.

   61.

**WHEREFORE**, plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

a.   Compensatory damages in an amount to be determined by a jury;

b.   Punitive damages in an amount to be determined by a jury;

c.   Costs, interest and attorney's fees, pursuant to 42 U.S.C. § 1988; and

d.   Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

DATED:      New York, New York
            September 28, 2020

                              ADAMS & COMMISSIONG LLP,
                              *Attorney for Plaintiff*
                              65 Broadway Suite 1603
                              New York, New York 10006
                              212-430-6590
                              martin@amcmlaw.com
                              By:


                              _____
                              MARTIN E. ADAMS, ESQ.