UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

GRETHEL MCDONALD,

                Plaintiff,

       v.

THE CITY OF NEW YORK; NYPD P.O. FELIX
MAK, SHIELD NO. 19522; NYPD P.O. RYAN
HARKINS, SHIELD NO. 10194; NYPD P.O.
BRIANA SURKO, SHIELD NO. 9240; and LT.
GRIGORIY BARDASH, *in their individual and
official capacities*,

                Defendants.

---------------------------------------------------------------

**MEMORANDUM & ORDER**
20-CV-4614 (MKB)

MARGO K. BRODIE, United States District Judge:

      Plaintiff Grethel McDonald commenced this action on September 28, 2020, alleging that the City of New York (the "City") and New York Police Department ("NYPD") Officers John/Jane Does #1–10 violated her civil and constitutional rights under 42 U.S.C. § 1983, 42 U.S.C. § 1988, and state law. (Compl. ¶ 1, Docket Entry No. 1.) On May 4, 2021, Plaintiff filed an Amended Complaint re-asserting claims against the City and naming Officers Felix Mak, Ryan Harkins, Briana Surko and Lieutenant ("Lt.") Grigoriy Bardash (collectively, the "Individual Defendants") as Defendants. (Am. Compl. ¶ 6, Docket Entry No. 12.) Plaintiff alleges that on September 30, 2017, the Individual Defendants unlawfully seized her bag without provocation while she was on private property and then arrested her. (*Id.* ¶¶ 8–13.) Plaintiff alleges false arrest, unlawful search and seizure, excessive force, malicious prosecution, and failure to intervene. (*Id.* ¶¶ 1, 38–68.)

Defendants move to dismiss the Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and Plaintiff opposes the motion.[1] For the reasons explained below, the Court denies Defendants' motion to dismiss Plaintiff's false arrest, unlawful search, excessive force, and failure to intervene claims and grants Defendants' motion to dismiss Plaintiff's malicious prosecution and *Monell* claims. The Court also grants Plaintiff leave to file a second amended complaint within thirty days of the date of this Memorandum and Order.

### I. Background

The Court assumes the truth of the factual allegations in the Amended Complaint for the purposes of this Memorandum and Order.

#### a. The parties

Plaintiff is an African-American female and a resident of New York State. (Am. Compl. ¶ 4.) The City of New York is a municipal corporation organized under the laws of New York State. (*Id.* ¶ 5.) The Individual Defendants were, at the time of the events alleged in the Amended Complaint, NYPD officers employed with the 120th Precinct in Richmond County, New York or "other as yet unknown NYPD [precinct]." (*Id.* ¶ 6.)

#### b. The arrest

On September 30, 2017, at approximately 1:00 AM, "in the vicinity of Campbell Street, West Brighton, Richmond County, Staten Island, New York," Plaintiff was at 173 Campbell Street and her bag was on the porch. (*Id.* ¶¶ 8–10.) Plaintiff saw either Officer Mak or Officer Harkins seize her bag and hold it. (*Id.* ¶ 11.) Plaintiff asked for her bag, but the officer "told

---

[1] (Defs.' Mot. to Dismiss ("Defs.' Mot."), Docket Entry No. 24; Defs.' Mem. in Supp. of Defs.' Mot. ("Defs.' Mem."), Docket Entry No. 26; Pl.'s Opp'n to Defs.' Mot. ("Pl.'s Opp'n"), Docket Entry No. 27.)

[P]laintiff [that] she could not have her bag, and that she had to go to the precinct." (*Id.* ¶¶ 12–13.) Plaintiff once again asked for her bag and told Officers Mak and Harkins that they "had no lawful right to take [P]laintiff's bag because it was on private property." (*Id.* ¶ 14.) One of the officers asked Plaintiff for her identification, and when she told the officers that she had her identification in her purse, Officer Harkins searched Plaintiff's bag and told Office Mak to write Plaintiff a ticket. (*Id.* ¶¶ 15–17.) Either or both Officers Mak and Harkins then "grabbed [P]laintiff" and "slammed [P]laintiff to the ground." (*Id.* ¶¶ 18–19.) One of the officers then put his knee on Plaintiff's face and called her a "bitch." (*Id.* ¶¶ 20–21.) Officer Mak placed "excessively tight" handcuffs on Plaintiff. (*Id.* ¶ 23.) Officer Surko and Lieutenant Bardash were present, Officer Surko assisted in the arrest, and Lieutenant Bardash supervised and approved of the arrest. (*Id.* ¶¶ 22, 24.) Officers Harkins, Surko, and Mak put Plaintiff in a police car, and Officers Mak and Harkins took Plaintiff to the 120th Precinct, where she remained in a cell while they processed her arrest. (*Id.* ¶¶ 26–28.) "During this time, . . . [Officer Mak] . . . falsely and maliciously told the Richmond County District Attorney's Office that [P]laintiff had committed various crimes." (*Id.* ¶ 29.) On or about December 21, 2018, all charges against Plaintiff were dismissed. (*Id.* ¶ 30.) Plaintiff alleges that the actions against her were motivated "by extreme recklessness and indifference" and "also based on profiling." (*Id.* ¶¶ 36–37.)

## II. Discussion

### a. Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor." *Sacerdote v. N. Y. Univ.*, 9 F.4th 95, 106–107 (2d Cir. 2021); *Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141,

145 (2d Cir. 2020). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Bacon v. Phelps*, 961 F.3d 533, 540 (2d Cir. 2020) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Cavello Bay Reinsurance Ltd. v. Shubin Stein*, 986 F.3d 161, 165 (2d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). Although all allegations contained in the Amended Complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *Vaughn*, 957 F.3d at 145 (same).

### b. Plaintiff's false arrest, unlawful search, excessive force, and failure to intervene claims are not time-barred

Defendants move to dismiss Plaintiff's false arrest, unlawful search, excessive force, and failure to intervene claims against the Individual Defendants on the basis that they are barred by the applicable section 1983 statute of limitations. (Defs.' Mem. 6.) In support, Defendants argue that: (1) the Amended Complaint does not relate back to the filing of the initial Complaint, (*id.* at 7–8); (2) Plaintiff's claims for false arrest, unlawful search, excessive force, and failure to intervene are time-barred "because they expired several months prior to the filing of the Amended Complaint," (*id.* at 8–10); and (3) Plaintiff's claims are not subject to former Governor Andrew Cuomo's Executive Order 202.8 (the "Executive Order"), which tolled the state statute of limitations due to the Covid-19 pandemic, because the Executive Order does not toll actions brought in federal court,[2] (*id.* at 10–12).

---

[2] The Court takes judicial notice of the Executive Order as a public record. (Executive Order, annexed to Decl. of Andrew Spears as Ex. B, Docket Entry No. 25-2); *see Elite Union Installations, LLC v. Nat'l Fire Ins. Co. of Hartford*, --- F. Supp. 3d ---, ---, 2021 WL 4155016, at * 4 (S.D.N.Y. Sept. 13, 2021) ("Courts may also 'take judicial notice of certain matters of

4

Plaintiff contends that the case was timely filed because the "statute of limitations was tolled due to the global Covid-19 pandemic," and that the Executive Order applies to cases filed in federal courts.[3] (Pl.'s Opp'n 3–7.)

The statute of limitations for claims brought pursuant to section 1983 is determined by state law, and in New York State, the statute of limitations for actions brought pursuant to section 1983 is three years. *See Helwing v. Pszeniczny*, No. 21-CV-843, 2022 WL 6130341, at *2 (2d Cir. Mar. 2, 2022) ("Section 1983 actions filed in New York are . . . subject to a three-year statute of limitations." (quoting *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013))); *Sant v. Stephens*, 821 F. App'x 42, 44–45 (2d Cir. 2020) ("The statute of limitations for actions brought in New York pursuant to [section 1983] . . . is three years." (first citing *Paige v. Police Dep't of City of Schenectady*, 264 F.3d 197, 199 n.2 (2d Cir 2001); and then citing *Okure v. Owens*, 816 F.2d 45, 49 (2d Cir. 1987), *aff'd*, 488 U.S. 235 (1989))); *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) ("The statute of limitations for claims brought under [s]ection 1983 is governed by state law, and in this case is the three-year period for personal injury actions under New York State law."). "While state law supplies the statute of limitations for claims under [section] 1983, federal law determines when a federal claim accrues. The claim accrues

---

public record . . . includ[ing] 'things such as statutes, case law, city charters, city ordinances, criminal case dispositions, letter decisions of government agencies, published reports, records of administrative agencies.'" (first quoting *Wells Fargo Bank, N.A. v. Wrights Mill Holding, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015); and then quoting *Rahman v. Schriro*, 22 F. Supp. 3d 305, 311 (S.D.N.Y. 2014))).

[3] Plaintiff provides a procedural history of the filing of the Complaint and Amended Complaint, (Pl.'s Opp'n 2–3), but does not address Defendants' arguments that the Amended Complaint does not relate back to the original Complaint and that her claims for false arrest, unlawful search, excessive force, and failure to intervene are time-barred. Plaintiff instead argues that the Executive Order stayed the statute of limitations, making the claims against the Individual Defendants timely.

5

when the plaintiff knows or has reason to know of the harm." *Connolly v. McCall*, 254 F.3d 36, 41 (2d Cir. 2001) (per curiam) (quoting *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994)); *see also Yany's Garden LLC v. City of New York*, No. 20-CV-3419, 2022 WL 288071, at *2 (2d Cir. Feb. 1, 2022) ("Section 1983 actions in New York are subject to a three-year statute of limitations, running from the time a plaintiff knows or has reason to know of the injury giving rise to the claim." (quoting *Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015))); *Sant*, 821 F. App'x at 45 ("Claims brought pursuant to [section] 1983 . . . accrue 'once the plaintiff knows or has reason to know of the injury which is the basis of his action.'" (quoting *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994))); *Shomo*, 579 F.3d at 181 ("A [s]ection 1983 claim ordinarily 'accrues when the plaintiff knows or has reason to know of the harm.'" (quoting *Eagleston,* 41 F.3d at 871)).

On March 20, 2020, former Governor Cuomo signed the Executive Order, which "suspend[ed] or modif[ied]" "any specific time limit for the commencement, filing, or service of any legal action, notice, motion, or other process or proceeding." (Executive Order.) Thereafter, Governor Cuomo signed additional orders continuing the toll of the statute of limitations until November 3, 2020. (Defs.' Mem. 10; Pl.'s Opp'n 5.) While the Second Circuit has not considered whether the Executive Order tolls the statute of limitations for section 1983 cases brought in federal courts, other courts in this Circuit have considered whether the Executive Order "applies to actions commenced in [f]ederal court alleging violations of the U.S. Constitution," *Johnson v. Fargione*, No. 20-CV-764, 2021 WL 1406683, at *3 (N.D.N.Y. Feb. 17, 2021), *report and recommendation adopted by* 2021 WL 1404554 (N.D.N.Y. Apr. 14, 2021), and the majority of the courts have determined that the Executive Order applies to section 1983 suits in federal courts. Because section 1983 does not provide for a federal statute of limitations,

6

but instead borrows the state statute of limitations, these courts have determined that the Executive Order applies to section 1983 and other federal cases involving New York's statutes of limitations. *See Rich v. State of New York*, No. 21-CV-3835, 2022 WL 992885, at *8 (S.D.N.Y. Mar. 31, 2022) ("[O]ther courts in this district have uniformly concluded that Executive Order 202.8 applies to federal cases applying New York's statute of limitations, including for [section] 1983 claims. The [c]ourt concludes, therefore, that Executive Order 202.8 tolls the statute of limitations for [the] [p]laintiff's [sections] 1983 and 1985 claims, which apply New York's three-year limitations period."); *Paul v. Capra*, No. 20-CV-5154, 2022 WL 992845, at *6 (S.D.N.Y. Mar. 31, 2022) ("Accordingly, the [c]ourt finds that the toll pursuant to Executive Order 202.8 should be borrowed in the context of [the] [p]laintiff's [s]ection 1983 claims."); *Bowers v. City of Salamanca*, No. 20-CV-1206, 2021 WL 2917672, at *5–6 (W.D.N.Y. July 12, 2021) (holding that the "Executive Order applies in section 1983[] '[b]ecause the Supreme Court wanted section 1983 actions to be subject to state "tolling rules," [and so] it seems likely that both statutory and common law rules are to be borrowed'" (quoting *Pearl v. City of Long Beach*, 296 F.3d 76, 81 (2d Cir. 2002))); *Bonilla v. City of New York*, No. 20-CV-704, 2020 WL 6686531 (E.D.N.Y. Oct. 3, 2020) (finding Executive Order 202.8 applicable to section 1983 cases brought in federal court), *affirmed by* 2020 WL 6637214 (E.D.N.Y. Nov. 12, 2020). The Court finds the reasoning in these cases persuasive.[4] Accordingly, Plaintiff's claims are tolled.

---

[4] Defendants cite to *Johnson v. Fargione*, where a court found that the Executive Order did not apply to federal actions. *Johnson v. Fargione*, No. 20-CV-764, 2021 WL 1406683, at *3 (N.D.N.Y. Feb. 17, 2021), *report and recommendation adopted by* 2021 WL 1404554 (N.D.N.Y. Apr. 14, 2021). In *Johnson*, the court found it significant that "[the] plaintiff fail[ed] to set forth any specific factual support to explain how the . . . pandemic prevented him from commencing this action prior to February 6, 2020," a deadline prior to the effective date of the Executive Order. *Id.* In addition to the fact that the Executive Order does not require an explanation from a party as to why Covid-19 prevented them from taking action, the deadline for commencing the action in *Johnson* predated the effective date of the Executive Order. *Id.*

7

Plaintiff's claims accrued on September 30, 2017, and thus would have expired on September 30, 2020, within the effective period of the Executive Order. The Executive Order's tolling extended the statute of limitations by 228 days to May 16, 2021, and Plaintiff filed the Amended Complaint naming the Individual Defendants on May 4, 2021, prior to the expiration of the extended statute of limitations. *See Freud v. N.Y.C. Dep't of Educ.*, No. 21-CV-2281, 2022 WL 889213, at *5 (S.D.N.Y. Mar. 25, 2022) ("Subsequent Executive Orders further extended the tolling order through November 3, 2020, for a total of 228 days."); *Ventilla v. Pac. Indem. Co.*, No. 20-CV-8462, 2021 WL 5234404, at *1 n.2 (S.D.N.Y. Nov. 10, 2021) ("Executive Order 202.8 tolled the statute of limitations for certain legal actions, 'as prescribed by the procedural laws of the state,' through April 19, 2020. . . . Subsequent Executive Orders further tolled the statute of limitations through November 3, 2020 for a total of 228 days." (citing *McLaughlin v. Snowlift Inc.*, 145 N.Y.S.3d 781 (N.Y. Sup. Ct. May 20, 2021))).

Accordingly, Plaintiff's false arrest, unlawful search, excessive force, and failure to intervene claims are not barred by the statute of limitations. Because this is the only basis for Defendants' motion to dismiss these claims, the Court denies Defendants' motion as to these claims.

### c. Plaintiff fails to state a viable *Monell* claim against the City of New York, but the Court grants her leave to amend the claim

Defendants argue that the Court should dismiss Plaintiff's *Monell* claim against the City because the Amended Complaint is "devoid of any non-conclusory factual allegations" and does not establish an official policy or custom that would permit the Court to find the City liable. (Defs.' Mem. 13.) Moreover, Defendants contend that even if Plaintiff had plausibly alleged a custom or practice, "she fails to explain the nexus or affirmative link between that pattern and the alleged constitutional violations in this case." (*Id.* at 14.)

8

Plaintiff argues that she plausibly alleges a *Monell* claim in the Amended Complaint because she alleges that the City "failed to properly train, retrain, supervise, discipline, and monitor the [I]ndividual [D]efendants and improperly retained and utilized them" and that the City "failed to adequately investigate prior complaints filed against the [I]ndividual [D]efendants." (Pl.'s Opp'n 8.)

To establish a municipal liability claim, a plaintiff is required to plead and prove three elements: "(1) an official policy or custom that (2) cause[s] [the plaintiff] to be subjected to (3) a denial of a constitutional right." *Torcivia v. Suffolk County, New York*, 17 F.4th 342, 355 (2d Cir. 2021) (quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)); *Lucente v. County of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020) (same); *see also Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 257 (2d Cir. 2020) ("To establish liability under *Monell*, a plaintiff must show that he suffered the denial of a constitutional right that was caused by an official municipal policy or custom." (quoting *Bellamy v. City of New York*, 914 F.3d 727, 756 (2d Cir. 2019))). A plaintiff can establish an official policy or custom by showing any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff and others encountering those subordinates. *See O'Kane v. Plainedge Union Free Sch. Dist.*, 827 F. App'x 141, 143 (2d Cir. 2020) (finding that failure to "take appropriate action to prevent or sanction violations of constitutional rights" amounted to deliberate indifference (quoting *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012))); *Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x 10, 13–14

9

(2d Cir. 2015) (formal policy officially endorsed by the municipality); *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014) (widespread and persistent practice); *Carter v. Inc. Vill. of Ocean Beach*, 759 F.3d 159, 164 (2d Cir. 2014) (failure to train amounting to deliberate indifference); *Jones*, 691 F.3d at 81 (policymaking official's "express" or "tacit" ratification of low-level employee's actions).

A failure to "supervise city employees may constitute an official policy or custom if the failure amounts to 'deliberate indifference' to the rights of those with whom the city employees interact." *Wray*, 490 F.3d at 195 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)). In addition, "municipal inaction such as the persistent failure to discipline subordinates who violate civil rights could give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct within the meaning of *Monell*." *Batista v. Rodriguez*, 702 F.2d 393, 397–98 (2d Cir. 1983) (collecting cases); *McDonald v. City of Troy*, 542 F. Supp. 3d 161, 174 (N.D.N.Y. 2021) ("Policies can be 'pronounced or tacit,' and can take the form of 'either action or inaction.'" (quoting *Lucente*, 980 F.3d at 297)); *see Savarese v. City of New York*, 547 F. Supp. 3d 305 (S.D.N.Y. 2021) ("Inaction can rise to the level of a municipal policy 'where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions.'" (quoting *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007))). To prove deliberate indifference, the plaintiff must show "that the need for more or better supervision to protect against constitutional violations was obvious." *Outlaw v. City of Hartford*, 884 F.3d 351, 373 (2d Cir. 2018) (citations omitted); *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995) (same); *Buari v. City of New York*, 530 F. Supp. 3d 356, 400 (S.D.N.Y. 2021) (same). "An obvious need may be demonstrated through proof of repeated complaints of civil rights

10

violations." *Vann*, 72 F.3d at 1049. In addition, the municipality's deliberate indifference can be "inferred if [prior] complaints of misconduct are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Id.*; *see Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 440 (2d Cir. 2009) ("[D]eliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." (alteration in original) (quoting *Vann*, 72 F.3d at 1049)). "Whether or not the claims had validity, the very assertion of a number of such claims put the City on notice that there was a possibility that its police officers had used excessive force." *Vann*, 72 F.3d at 1049 (alteration in original) (first citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119,123 (2d Cir. 1991); and then quoting *Fiacco v. City of Rensselaer*, 783 F.2d 319, 328 (2d Cir. 1986)).

Plaintiff alleges that the City, through "a policy, practice, and custom, directly caused the constitutional violations suffered by [P]laintiff." (Am. Compl. ¶ 59.) In support, Plaintiff alleges that the City's unconstitutional practices were: "(1) unlawfully stopping and searching innocent persons; (2) wrongfully arresting innocent persons in order to meet productivity goals; (3) wrongfully arresting individuals based on pretexts and profiling; (4) using unreasonable force on individuals; and (5) fabricating evidence against innocent persons." (*Id.* ¶ 60.) Plaintiff alleges that the City was aware that the Individual Defendants were "unfit" and "have a propensity for unconstitutional conduct, or have been inadequately trained," and nonetheless "failed to properly train, retrain, supervise, discipline, and monitor" them, thus exercising deliberate indifference, and that the existence of the unconstitutional customs and policies "may be inferred from repeated occurrences of similar wrongful conduct involving the [I]ndividual [D]efendants." (*Id.* ¶¶ 61–62, 64.) In further support, Plaintiff names other police officers who

11

have been convicted of crimes and alleges that "numerous members of the NYPD commit crimes," specifically mentioning one officer's conviction for murder and attempted murder, another officer's conviction for perjury, and another officer's conviction for sexual assault. (*Id.* ¶ 65.)

Because Plaintiff fails to allege any facts to support an inference that the City had an official policy or custom that caused a violation of any federal rights, or that the City failed to train, retrain, supervise, and monitor the Individual Defendants in a way that would amount to deliberate indifference, Plaintiff's allegations are insufficient to plausibly allege a claim. *See Garcia v. Bloomberg*, 662 F. App'x 50, 54 (2d Cir. 2016) ("Liability under section 1983 is imposed on the municipality when it has promulgated a custom or policy that violates federal law and, pursuant to that policy, a municipal actor has tortiously injured the plaintiff." (quoting *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013))); *Schnitter v. City of Rochester*, 556 F. App'x 5, 9 (2d Cir. 2014) (affirming the district court's dismissal of the plaintiff's *Monell* claims at the pleading stage); *Forbes v. Doe*, No. 18-CV-6700, 2022 WL 170605, at *6 (W.D.N.Y. Jan. 18, 2022) ("To establish municipal liability under [section] 1983, a plaintiff must do more than simply state that a municipal policy or custom exists. Rather, a plaintiff must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." (quoting *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012))); *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012) (holding that "vague, conclusory allegations that [a municipality] permitted, tolerated, and covered up police abuses, while failing to discipline and supervise offending police officers" were insufficient for *Monell* liability). Plaintiff's alleged instances of unlawful misconduct by non-defendant officers, including convictions for murder and attempted murder, perjury, and sexual assault, are factually dissimilar

to the conduct alleged in the Amended Complaint and thus are insufficient to support a *Monell* claim. (Am. Compl. ¶ 65); *Cox v. City of New Rochelle*, No. 17-CV-8193, 2019 WL 3778735, at *8 (S.D.N.Y. Aug. 12, 2019) ("Yet, [the] [p]laintiff fails to explain how these alleged incidents are at all similar in kind to the conspiracy, false arrest, and malicious prosecution allegations at issue in this [a]ction. The [c]ourt thus concludes that these alleged incidents do not plausibly support his *Monell* claim.") (collecting cases); *Gaston v. Ruiz*, No. 17-CV-1252, 2018 WL 3336448, at *6 (E.D.N.Y. July 6, 2018) (dismissing *Monell* claim where the plaintiff relied on "factually dissimilar" cases); *Aguirre v. City of New York*, No. 15-CV-6043, 2017 WL 4236552, at *6 (E.D.N.Y. Sept. 22, 2017) ("Similarly, . . . a two-decades-old report about concerns of perjury and document falsification by the NYPD and . . . criminal convictions of police officers and police misconduct — all unrelated to the instant case — are insufficient for [the] [p]laintiff to allege a plausible *Monell* claim.").

The Court grants Plaintiff leave to file a second amended complaint to replead her *Monell* claim within thirty days of this Memorandum and Order. *See Caren v. Collins*, 696 F. App'x 19, 22 (2d Cir. 2017) ("[D]ismissals for insufficient pleadings are ordinarily with leave to replead." (quoting *Stern v. Gen. Elec. Co.*, 924 F.2d 472, 477 (2d Cir. 1991))); *see also Cotiviti, Inc. v. Deagle*, 501 F. Supp. 3d 243, 264 (S.D.N.Y. 2020) (*sua sponte* granting leave to file a second amended complaint where plaintiff could provide missing facts necessary to support its claims).

### d. The Court grants Plaintiff leave to amend her malicious prosecution claim

Defendants argue that Plaintiff fails to adequately state a malicious prosecution claim against Officer Mak because she fails to sufficiently allege that she suffered a post-arraignment

13

deprivation of liberty or that the criminal proceedings terminated in her favor.[5] (Defs.' Mem. 14–17.) Defendants also contend that Plaintiff has abandoned her claim by "failing to respond to the arguments for dismissal set forth in the [D]efendants' moving papers." (Defs.' Reply 5.)

Plaintiff has not addressed Defendants' arguments to dismiss her malicious prosecution claim in her opposition briefing. (*See generally* Pl.'s Opp'n.)

While ordinarily under the circumstances the Court would have found that Plaintiff has abandoned this claim, *see BYD Co. Ltd. v. VICE Media LLC*, 531 F. Supp. 3d 810, 821 (S.D.N.Y. 2021) ("Plaintiffs' failure to oppose [the] [d]efendants' specific argument in a motion to dismiss is deemed waiver of that issue." (quoting *Kao v. Brit. Airways, PLC*, No. 17-CV-232, 2018 WL 501609, at *5 (S.D.N.Y. Jan. 19, 2018))), in view of the Supreme Court's recent decision in *Thompson v. Clark*, --- U.S. ---, ---, 142 S. Ct. 1332, 2022 WL 994329 (2022), which set aside the Second Circuit's higher standard for determining whether a proceeding has been terminated in a plaintiff's favor in order to state a malicious prosecution claim, *see Lanning v. City of Glen Falls*, 908 F.3d 19 (2d Cir. 2018), the Court allows Plaintiff to amend her malicious prosecution claim. In her second amended complaint, Plaintiff must allege facts to satisfy the termination and deprivation of liberty prongs of her malicious prosecution claim.

Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's malicious prosecution claim but grants leave to replead this claim.

---

[5] Defendants recently withdrew their argument that Plaintiff failed to sufficiently allege that the criminal proceedings terminated in her favor. (Defs.' Letter dated Apr. 29, 2022, Docket Entry No. 30.)

### III. Conclusion

For the reasons stated above, the Court denies Defendants' motion to dismiss Plaintiff's false arrest, unlawful search, excessive force, and failure to intervene claims because they are not time-barred. The Court dismisses Plaintiff's malicious prosecution and *Monell* claims but grants Plaintiff leave to file a second amended complaint within thirty days of the date of this Memorandum and Order.

Dated: May 10, 2022
       Brooklyn, New York

                                      SO ORDERED:

                                      _____s/ MKB_____
                                      MARGO K. BRODIE
                                      United States District Judge